## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

THOMAS SPENCER, JR., as
administrator of the ESTATE OF
THOMAS SPENCER, III,

      Plaintiff,

      v.

UNITED STATES OF AMERICA,
et al.,

      Defendants.

CIVIL ACTION NO. 2:24-cv-01145

(SAPORITO, J.)

## MEMORANDUM

This is a negligence and wrongful death action for damages, brought by Thomas Spencer, Jr., as administrator of the Estate of Thomas Spencer, III, against the United States and Renewal, Inc., a private community corrections organization.[1]

Although the United States has answered the amended complaint, Renewal has filed a Rule 12(b)(6) motion to dismiss the claims against it for failure to state a claim upon which relief can be granted. Doc. 23. Renewal has filed a brief in support of its motion, Doc. 24, the Estate has

---

[1] The Estate's claims against the United States are brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and its state-law claims against Renewal are brought under 28 U.S.C. § 1367.

filed a brief in opposition, Doc. 31, and Renewal has filed a reply brief, Doc. 34. The parties have presented oral argument, and the motion is ripe for decision.

## I.  FACTUAL ALLEGATIONS[2]

After pleading guilty to several felony offenses, the decedent, Thomas Spencer, III, was sentenced to serve a term of 78 months of imprisonment, to be followed by three years of supervised release.

On or about October 7, 2022, Spencer was designated to serve the final months of his prison sentence in prerelease custody at a Pittsburgh residential reentry center (i.e., a halfway house) operated by Renewal.[3] His term of imprisonment was set to expire on January 4, 2023, at which time he was expected to be released from custody and to commence his

---

[2] In addition to the factual allegations of the complaint filed in this civil action, the court has also considered the publicly available record of the federal criminal proceedings against the decedent, *United States v. Spencer*, No. 2:17-cr-00092 (W.D. Pa. judgment entered Apr. 8, 2019), of which we may properly take judicial notice. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

[3] *See generally* 18 U.S.C. § 3624(c)(1) (authorizing the BOP to designate a residential reentry center as an inmate's place of incarceration for the final months of his or her term of imprisonment); 28 C.F.R. § 570.21(a) (same).

three-year term of supervised release.

On January 3, 2023, a United States probation officer filed a petition to modify the conditions of Spencer's supervision, with Spencer's consent. The petition indicated that Spencer had no viable home plan or approved residence to be released to on January 4, 2023. Accordingly, the probation officer requested, with Spencer's consent, that the sentencing judge modify the conditions of Spencer's supervision to require him to reside at a residential reentry center, such as the one operated by Renewal, for a period of up to 180 days or until discharged by the probation office so Spencer could be released to an approved residence. That same day, the sentencing judge granted the petition and ordered the conditions of Spencer's supervision to be so modified.[4]

On or about April 17, 2023, Spencer had a disagreement with his case manager at Renewal and became extremely agitated, distressed, and emotionally distraught. Spencer's probation officer, Dawn Robinson,

---

[4] In full, the newly modified condition of supervision provided that: "The defendant will reside at a Residential Reentry Center, such as the Renewal Center Inc., for a period not to exceed 180 days, or until discharged by the Probation Office. The defendant shall observe the rules of the facility, and the subsistence fee owed to the Residential Reentry Center will be waived in full, as opposed to the previously established 25% of gross income for subsistence payments." Doc. 23-2.

and one or more unknown employees of Renewal were present and aware of Spencer's agitated and distressed state. Robinson and the unknown Renewal employee(s) were also allegedly aware that Spencer had a "propensity to jump out of windows." Despite this knowledge of Spencer's agitated and distressed state and his propensity to jump out of windows, Robinson and the unknown Renewal employee(s) left Spencer alone in a seventh-floor room with no supervision. While in the care, custody, and control of Renewal, Spencer broke a window and jumped out of a seventh-floor window to his death.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged

on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.  DISCUSSION

The Estate has asserted negligence and wrongful death claims against Renewal, alleging that Renewal and its agents were aware of his agitated and distressed mental state and his propensity to jump from windows, but they nonetheless left Spencer unsupervised, such that

Spencer was able to break a window and jump from that seventh-floor window to his death. Thus, the Estate alleges that Renewal breached its duty to use reasonable care to protect Spencer, who was in its care, custody, and control as part of his supervised release, from a reasonably foreseeable risk of suicide.

Renewal has moved to dismiss the claims against it for failure to state a claim upon which relief can be granted. First, Renewal argues that Spencer's suicide constitutes an intervening act that was not reasonably foreseeable to Renewal and its agents. Second, Renewal argues that, based on the facts alleged, Spencer may not have committed suicide at all, suggesting that he instead might have broken the seventh-floor window in an attempt to escape, falling to his death in the process. Finally, Renewal argues that dismissal of the Estate's negligence claim against Renewal requires dismissal of the Estate's wrongful death claim as well.[5]

---

[5] A wrongful death claim is "not a substantive cause[] of action; rather [it] provide[s] a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015). "[A]lthough death is the necessary final event in a wrongful death claim, the cause of action is derivative of the underlying tortious acts that caused the fatal injury." *Sunderland v.*
(continued on next page)

"[T]o state a claim for negligence under Pennsylvania law, a complaint must allege: (1) a legally recognized duty or obligation of the defendant, (2) the breach of that duty, and (3) a causal connection between the breach and the plaintiff's damages." *Conley v. St. Jude's Med., LLC*, 482 F. Supp. 3d 268, 277 (M.D. Pa. 2020). In its motion papers, Renewal argues that it lacked any duty to protect Spencer from his own suicidal acts, because suicide is an independent intervening act and Spencer was in the custody of federal probation officials rather than Renewal.

Both sides have acknowledged that, under Pennsylvania law:

> Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is so because suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor.

*McPeake v. William T. Cannon, Esquire, P.C.*, 553 A.2d 439, 440–41 (Pa. Super. Ct. 1989). This rule, however, admits to several recognized exceptions, including cases in which there was a custodial relationship

---

*R.A. Barlow Homebuilders*, 791 A.2d 384, 391 (Pa. Super. Ct. 2002), *aff'd*, 838 A.2d 662 (Pa. 2003). The Estate's statutory wrongful death claim is coextensive with and dependent upon its common-law negligence claim. Thus, the Estate's two claims against Renewal rise or fall together.

and the defendant had a recognized duty of care toward the decedent. *See, e.g.*, *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1084 (3d Cir. 1991) (citing Restatement (Second) of Torts § 314A and holding that, under the Pennsylvania common law rule, "jail authorities who know or should know that a prisoner, unless forestalled, is likely to harm himself, must exercise reasonable care to ensure that the harm does not occur"); *McPeake*, 553 A.2d at 41 ("Pennsylvania has recognized suicide as a legitimate basis for wrongful death claims involving hospitals, mental health institutions and mental health professionals, where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent."). *See generally* Restatement (Second) of Torts § 314A(4) ("One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a . . . duty to [protect] the other [against unreasonable risk of physical harm].").

Whether such a custodial relationship existed between Spencer and Renewal, sufficient to trigger a duty to protect him, will depend, in large part, on the degree of control Renewal exercised over Spencer. *Cf. Meehan v. Pa. Bd. of Probation & Parole*, 808 A.2d 313, 316–17 (Pa.

Commw. Ct. 2002) (engaging in a fact-intensive determination whether restrictions imposed on a parolee residing at a private-sector drug and alcohol treatment facility as a condition of parole were so restrictive as to constitute incarceration); *Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 968 (Colo. 1998) (en banc) (engaging in a fact-intensive determination whether the operator of a private-sector community corrections facility exercised a sufficient level of control over a resident offender to trigger a common law duty to protect others from the resident offender's conduct). Spencer resided at the Renewal halfway house in Pittsburgh, in prerelease custody, during the final three months of his active federal prison sentence. Lacking a viable home plan or approved residence, the conditions of his supervised release were modified to extend his residence at the same Renewal halfway house, subject to the same facility rules, for more than three months after his prison sentence expired, up until his death. Based on the allegations of the complaint and the court records of which we have taken judicial notice, viewing them in the light most favorable to the plaintiff, we find it reasonable to infer that Spencer was subject to the same restrictive conditions as a resident at the Renewal halfway house while confined there in prerelease custody

and, subsequently, while confined there as a condition of his supervised release. The degree of such restrictions are not made clear by the record before us, but we find the facts alleged and judicially noticed sufficient to "raise a reasonable expectation that discovery will reveal evidence of" the custodial (or non-custodial) nature of the relationship between Renewal and Spencer—i.e., the actual conditions and restrictions of Spencer's residence at the Renewal halfway house, whether that amounted to his custodial detention or incarceration there, and whether that control over Spencer was exercised by Renewal and its employees, rather than by federal probation officials exclusively. *See Twombly*, 550 U.S. at 556; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

In its initial brief, Renewal also appears to dispute whether Spencer actually committed suicide, suggesting that he instead might have broken the seventh-floor window in an attempt to escape, falling to his death in the process. But at this, the pleadings stage, we are constrained to view the facts alleged in the light most favorable to the non-moving plaintiff. Based on the allegations of the complaint, particularly mindful of the fact that the Estate and its administrator lack direct knowledge of the decedent's state of mind at the time of his death, we find it reasonable

to infer that Spencer's actions were motivated by suicidal intent. Moreover, we find the facts alleged and judicially noticed sufficient to "raise a reasonable expectation that discovery will reveal evidence of" the decedent's state of mind as expressed or exhibited by Spencer while in the care, custody, and control of the defendants or their agents. *See Twombly*, 550 U.S. at 556; *Phillips*, 515 F.3d at 234.

## IV.  CONCLUSION

For the foregoing reasons, the court will deny the moving defendant's motion to dismiss the plaintiff's claims against it.

An appropriate order follows.

Dated: August 7, 2025                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge